**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

STACEY NICOLE OWENS,

           Plaintiff,

vs.                                                        Case No. 3:16-cv-1180-J-JRK

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

           Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Stacey Nicole Owens ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "a head injury" sustained from a physical assault, that in turn has caused memory problems, dizzy spells, and post traumatic stress disorder. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed December 13, 2016, at 59, 73, 257, 260; see also Tr. at 190. On February 8, 2013, Plaintiff filed an application for DIB, alleging an onset disability date of June 18, 2011, Tr. at 149-50, and on February 16, 2013, Plaintiff filed an application for SSI, alleging the same onset date, Tr. at 151-56 (SSI).[2] Plaintiff later

---

     [1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed December 13, 2016; Reference Order (Doc. No. 14), signed December 15, 2016 and entered December 16, 2016.

     [2] Although actually completed on February 8, 2013 and February 16, 2013, respectively, the protective filing date of Plaintiff's DIB and SSI applications is listed elsewhere in the administrative

(continued...)

amended her alleged disability onset date to June 18, 2012, the approximate date of the physical assault.³ Tr. at 39, 257. Plaintiff's applications were denied by the Administration. See Tr. at 73-86, 88 (DIB), 59-72, 87, 89-94 (SSI). Thereafter, Plaintiff filed a written request for a hearing. Tr. at 97-98.

On November 10, 2014, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 33-58. The ALJ issued a Decision on February 20, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 16-26. On July 22, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On September 16, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes three arguments. See Plaintiff's Brief (Doc. No. 18; "Pl.'s Br."), filed Mach 15, 2017, at 1-2. First, Plaintiff argues that the ALJ's "residual functional capacity [('RFC')] assessment failed to reflect proper consideration of [Plaintiff's] headaches." Pl.'s Br. at 1 (capitalization omitted); see id. at 8-16. Second, Plaintiff contends that the ALJ "erroneously evaluated Plaintiff's mental [RFC], improperly relying on a nonexistent 'mental examination' by [(Disability Determination Services)] and overlooking or ignoring part of [Robin L. Moody, Ph.D.'s] opinion to assume [Plaintiff] could sustain the

---

²(...continued)
transcript as February 7, 2013. See, e.g., Tr. at 59, 73, 187.

³ Plaintiff recognized in amending the date that she was initially mistaken as to the date of the assault. Tr. at 39. According to Plaintiff, the mistake occurred because she "get[s] dates confused now" and "can't remember stuff because once [sic] like [she] used to." Tr. at 39.

performance of basic mental tasks with occasional public contact." Id. at 1 (capitalization omitted); see id. at 16-19. Third, Plaintiff argues that "the ALJ reversibly erred by failing to provide a proper evaluation of [Plaintiff's] subjective complaints and credibility." Id. at 2 (capitalization omitted); see id. at 19-25. As part of this third argument, Plaintiff contends the ALJ erred in failing to take into account her inability to afford treatment. Id. at 24. On June 14, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") addressing Plaintiff's arguments. Then, with leave of Court, see Order (Doc. No. 23), Plaintiff on July 7, 2017 filed a Reply Brief (Doc. No. 24; "Reply").

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 18-25. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since June 18, 2012, the alleged onset date." Tr. at 18 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: post-traumatic stress disorder (PTSD); depression, and status post traumatic brain injury (TBI) with residual headaches and neurocognitive disorder." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 19 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b), except: she can never use a ladder and must avoid all exposure to hazards (i.e., dangerous machinery, unprotected heights). She can perform simple, repetitive tasks and instructions in a work environment with only occasional public contact.

Tr. at 21 (emphasis omitted). At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 24 (emphasis and citations omitted). At step five, the ALJ considered Plaintiff's age ("28 years old . . . on the alleged disability onset date"), education ("limited education and is able to communicate in English"), work experience, and RFC, and relied on the testimony of the VE to find Plaintiff is capable of performing work that "exist[s] in significant numbers in the national economy." Tr. at 24 (emphasis and citations omitted). Namely, the ALJ identified representative jobs of "final inspector" and "housekeeping laundry." Tr. at 25.

The ALJ concluded that Plaintiff "has not been under a disability . . . from June 18, 2012, through the date of th[e D]ecision." Tr. at 25 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The undersigned addresses Plaintiff's contentions about the medical opinions together with Plaintiff's challenge to the ALJ's assessment of her credibility (Plaintiff's second and third arguments). Following that discussion, the undersigned addresses Plaintiff's argument that the RFC does not reflect proper consideration of Plaintiff's headaches (Plaintiff's first argument).

**A. Medical Opinions and Credibility[5]**

Plaintiff challenges the ALJ's assessment of the medical opinions in three ways. First, Plaintiff contends the ALJ erroneously relied on the opinion of non-examining agency physician Robert Estock, M.D., while believing it to be an examining opinion. Pl.'s Br. at 16-17. Second, Plaintiff argues the ALJ assigned great weight to the examining opinion of Dr. Moody but did not include all of the limitations that Dr. Moody assigned. Id. at 17, 18-19. Third, Plaintiff argues the ALJ improperly rejected the treating opinion of Dr. Kidd, but in making this argument, Plaintiff recognizes that Dr. Kidd's opinion could have been "more detailed." Id. at 17.

Responding to the arguments about the various medical opinions, Defendant contends first that the ALJ properly relied in part on Dr. Estock's opinion due to its consistency with the evidence, and "[w]hile the ALJ may have inadvertently referred to Dr. Estock's assessment as an 'examination,' that does not detract from the propriety of the

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

ALJ's evaluation of Dr. Estock's opinion." Def.'s Mem. at 9-10 (citation omitted).  Second, Defendant argues the ALJ properly assigned great weight to Dr. Moody's opinion and adequately accounted for the various aspects of the opinion.  Id. at 10.  Third, Defendant contends the ALJ properly afforded little weight to Dr. Kidd's opinion because Dr. Kidd opined on the ultimate question of disability, which is reserved to the Commissioner, and because Dr. Kidd's opinion was conclusory.  Id. at 10-11.

As far as credibility, Plaintiff argues the ALJ did not perform a proper evaluation of her subjective complaints or the lay third-party observations of Plaintiff's friend, Viola Corlex. Pl.'s Br. at 19-25.  As part of the credibility challenge, Plaintiff asserts the ALJ should have "properly consider[ed]" her allegations that she was unable to afford treatment.  Id. at 24. Responding, Defendant argues the ALJ did not err in finding that Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  Def.'s Mem. at 12.

The Regulations establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919,

---

[6] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing

---

[7] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

"good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

Although "credibility determinations are the province of the ALJ," Moore, 405 F.3d at 1212, "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms."

Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

The Regulations provide that the Administration will take into account evidence from family members, relatives, and caregivers in determining "the severity of [a claimant's] impairments and how it affects [the claimant's] ability to work." 20 C.F.R. §§ 404.1513(d)(4), 416.929(c)(3); see also Social Security Ruling 06-03p, 2006 WL 2329939, at *6. The failure of an ALJ to address such statements in the decision is reversible error, see Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990), unless the statements are merely "cumulative of the other evidence in the record," De Olazabal v. Soc. Sec. Admin., Comm'r, 579 F. App'x 827, 832 (11th Cir. 2014).

Here, as relevant, the ALJ assigned "great weight to the State agency medical opinion," noting that the "mental examination was performed by an acceptable medical source." Tr. at 24 (citing "Exhibits 1A, Pages 7, 11-12; 2A, Pages 7, 11-12"). The opinion that the ALJ was referring to is actually the opinion of Dr. Estock, who did not perform a mental examination. See Tr. at 65-70 (opinion regarding SSI claim), 79-84 (same opinion regarding DIB claim). Rather, Dr. Estock reviewed the medical evidence in the file and rendered an opinion based upon that evidence on March 19, 2013 regarding Plaintiff's work-related abilities. See Tr. at 65-70, 79-84. The ALJ also assigned "great weigh[t]" to the examining opinion of Dr. Moody. Tr. at 23. In doing so, the ALJ summarized the examination findings and Dr. Moody's opinion in detail. Tr. at 23-24. Finally, the ALJ assigned "little weight" to the opinion of treating physician Dr. Kidd for three reasons: 1) "the determination of disability is one reserved to the Commissioner alone, and she is not

qualified to render opinions regarding [Plaintiff's] vocational abilities"; 2) "Dr. Kidd did not provide any specific functional limitations or even clinical symptoms to support her opinion"; and 3) Dr. Kidd's "opinion is not well supported by the evidence discussed [in the Decision]." Tr. at 23.

The ALJ did not reversibly err in assessing the opinion evidence. Although the ALJ mistakenly referred to Dr. Estock's opinion as having been rendered after "examination," this error is harmless. The ALJ did not rely only on Dr. Estock's opinion for the relevant findings; the ALJ also relied on Dr. Moody's opinion that was rendered after an examination. These opinions are largely consistent. Compare Tr. at 65-70, 79-84 (Dr. Estock), with Tr. at 468-477 (Dr. Moody). Indeed, in explaining the various aspects of the opinions upon which the ALJ relied, the ALJ discussed them together:

> The State agency mental examination was performed by an acceptable medical source [(actually Dr. Estock's non-examining opinion)] who found [Plaintiff's] depression was severe but anxiety was not. [Plaintiff] was found to have mild restrictions in activities of daily living, mild difficulties maintaining social functioning, moderate difficulties maintaining concentration/ persistence/pace, and 1-2 episodes [of] decompensation. [Plaintiff] was found capable of simple tasks and interacting with the public but with only casual proximity to others and not intensive or prolonged interaction. I give great weight to the State agency mental opinion. While they found only mild social limitations and anxiety is nonsevere, they did find some social limitations, which is why I have similarly limited [Plaintiff] and found this to be a moderate limitation. I have also found several severe mental impairments because of her history. Based on the findings from Dr. Moody's [consultative examination], I have also found [Plaintiff] would have moderate difficulties maintaining concentration, persistence, and pace and limited her to unskilled work.

Tr. at 24. Further, a comparison of Dr. Estock's and Dr. Moody's opinions to the ALJ's ultimate RFC shows the ALJ adequately accounted for the various aspects of those opinions.

Compare Tr. at 65-70, 79-84 (Dr. Estock's opinion), and Tr. at 468-77 (Dr. Moody's opinion), with Tr. at 21 (RFC).

Finally, the ALJ appropriately discounted the treating opinion of Dr. Kidd. This opinion, rendered on August 22, 2013, is conclusory. It simply lists Plaintiff's diagnoses: "anxiety, depression, PTSD, migraines," and states that Plaintiff will be unable to work for a "lifetime." Tr. at 467 (some capitalization omitted). The opinion was properly rejected as conclusory and inconsistent with the rest of the evidence. See, e.g., Hargress, 883 F.3d at 1305 (citation omitted). Also, to the extent that Dr. Kidd offered an opinion as to Plaintiff's ability to work, such opinions are reserved for the Commissioner. See Denomme v. Comm'r, Soc. Sec. Admin., 518 F. App'x. 875, 878 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)) (holding that opinions on issues such as whether a condition would likely prevent a claimant from maintaining gainful employment are not medical assessments, but are rather opinions on issues reserved to the Commissioner's discretion).

As to the ALJ's credibility finding, the undersigned finds that it is supported by substantial evidence. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in th[e D]ecision." Tr. at 22. The ALJ then engaged in an analysis of Plaintiff's credibility and in doing so, relied on objective medical evidence, her sporadic treatment, her reports in various forms submitted to the Administration, her daily activities, and the relatively benign findings during mental status examinations. Tr. at 22-23. The ALJ also recognized Plaintiff's friend's (Viola Corlex's)

report, Tr. at 22, as containing "similar allegations" to those of Plaintiff regarding Plaintiff's headaches. Tr. at 22.

Plaintiff's inconsistent reports to various medical providers and the providers' observations about Plaintiff's motivation and manipulative tendencies provide further support for the ALJ's credibility finding. For example, Plaintiff in an August 2014 clinical assessment "admit[ted] to a [history] of . . . marijuana use and state[d] that she was positive at her ER consult earlier this month because she used it for a headache." Tr. at 459. Plaintiff "expresse[d] at great length how she believes in the use and benefits of marijuana in spite of the fact that it is illegal and it seem[ed] as though she [was] trying to persuade [the] clinician of her point of view." Tr. at 459. The clinician "question[ed]" whether Plaintiff's then-pending disability application was "her motive" for mental health treatment. Tr. at 459; see Tr. at 22-23 (ALJ recognizing record indicating that Plaintiff "appeared to be seeking treatment only because she was applying for disability") (citation omitted). Yet, in the December 2014 examination by Dr. Moody (just four months later), Plaintiff "failed to admit to Cannabis use although records indicate she has abused the drug." Tr. at 472. Dr. Moody observed that Plaintiff "seems to have a martyr complex," and observed that Plaintiff "seems somewhat manipulative." Tr. at 472.

Finally, although the ALJ did not specifically discuss Plaintiff's testimony that she "quit going" to the emergency room and seeking treatment for headaches due to lack of insurance, high medical bills, and not wanting to take pain medication, Tr. at 42, 50, the ALJ specifically recognized Plaintiff's contention that she was unable to afford medication, Tr. at 22. Given this recognition, and given that the ALJ did not rely significantly on Plaintiff's

-14-

noncompliance with prescribed treatment, the ALJ did not reversibly err in this regard. See Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 921 (11th Cir. 2015) (citing Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003)) (finding that "[w]here the ALJ d[oes] not rely significantly on the claimant's noncompliance . . . the ALJ's failure to consider evidence regarding the claimant's ability to afford her prescribed treatment does not constitute reversible error").

In sum, the ALJ appropriately supported the credibility finding with "explicit and adequate reasons," Wilson, 284 F.3d at 1225, and those reasons are supported by substantial evidence.

## B. RFC–Accounting for Plaintiff's Headaches

Plaintiff challenges the ALJ's RFC determination because, according to Plaintiff, it does not reflect proper consideration of Plaintiff's headaches. Pl.'s Br. at 8-16; see also Reply. Responding, Defendant contends that substantial evidence supports the RFC finding that Plaintiff can perform a reduced range of light work. Def.'s Mem. at 6-8.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider

a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the ALJ, having found Plaintiff's headaches to be severe, Tr. at 18, accounted for them later in formulating Plaintiff's RFC, Tr. at 21. The Decision makes clear that the ALJ took into account Plaintiff's headaches, to the extent her allegations were deemed credible. The ALJ in the Decision accurately summarized the medical evidence with respect to Plaintiff's headaches. See Tr. at 22. Having appropriately discounted Plaintiff's subjective complaints regarding her headaches and other ailments, however, the ALJ was only required to account for the headaches to the extent the ALJ found the allegations credible and to the extent they were consistent with the evidence. The undersigned finds that substantial evidence supports the ALJ's RFC limitation to "light work" with the additional restrictions of "never us[ing] a ladder," "avoid[ing] all exposure to hazards," and "perform[ing] simple, repetitive tasks and instructions in a work environment with only occasional public contact." Tr. at 21; see, e.g., Tr. at 386-87 (October 2013 treatment note stating that "[h]eadaches have been intermittent since event with occasional amnesia"), 448-49 (December 2013 ER note documenting headache "symptoms are [m]oderate, dull, [c]onstant" and stating Plaintiff "requested lortab for pain management" even though reporting that nothing improved her symptoms).

## V.  Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's decision.

2. The Clerk of Court is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 26, 2018.

                                                            JAMES R. KLINDT
                                          United States Magistrate Judge

kaw
Copies to:
Counsel of record